The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zina presiding. Good morning, counsel. This is case number 4-250185, people of the State of Illinois v. Anthony Demetres Fowler. Would counsel for the appellant state your name, please, and introduce yourself. Yes. Good morning, Your Honors. My name is Stephanie Puente. I'm from the Office of the State Appellate Defender, and I represent the appellant Anthony Fowler. Thank you. And counsel for appellate? My name is Justin Nicolosi. I'm the counsel for the State of Illinois in this case. Thank you very much. All right, Ms. Puente, you may begin your argument. Thank you, Your Honor. May it please the court, counsel. Today, I will be discussing two points. The first involves a claim of unreasonable assist, a claim of actual innocence, and the second claim involves, the second point is a claim of unreasonable assistance. Turning to my first point, in Ortiz, the Illinois Supreme Court adopted a balancing test, which trial courts must follow to determine whether newly discovered evidence would have been likely to produce a new result on retrial. That is, courts are to balance the testimony of the new witness in light of the evidence presented at trial and make a practical judgment about how jurors would react to this relative shift in the strength of each side's case. Here, the trial court committed manifest error because it did not conduct this balancing test. Instead, the court considered Joseph Horton's testimony in isolation and made credibility determinations based on a misapprehension of the strength of the trial evidence. So, when you're, I guess I'd like to focus on this point for a minute or so, you argued that the trial court misapplied the standard for evaluating the actual innocence claim and made definitive rulings regarding witness credibility. Isn't that exactly what the trial court should do? And in fact, indeed, even in this instance, also stated that it was taking into account all of the evidence, the facts. Let's see, I had the quote handy. I'm afraid I don't want to take up your time with it. Well, indicated in essence, it considered everything. So, what specifically do you think the trial court got wrong here? Yes, what the trial court got wrong is the court applied more of a total vindication or exoneration standard that's incompatible with Coleman. And the reason we say this is if you look at the dismissal order, the language that she used on the dismissal ordered said relevant, but not merely enough to meet the defendant's burden. It falls short and it cannot overcome the overwhelming evidence, and she cites to the direct appeal decision on that. But the direct appeal, the appellate court and the direct appeal did not specifically say the court, the evidence was overwhelming. It said there was no prejudice and it and in its assessment of the facts or summary of the facts, it pointed out to weaknesses in the state's case, which shows that. According testimony, which would have corroborated. Fowler's testimony that he was not the shooter. There's no evidence of that, that his testimony, besides any deficiencies he had might have tilted this balance in favor of of Mr Fowler. And again, this standard that was applied is inconsistent with Coleman and that and Coleman and there, you know, following Coleman, it tell that the Horton's testimony may not be so credible to completely exonerate Fowler rather the question before the court, whether was whether Horton's testimony was a sufficient weight that it warranted submission to the jury for consideration against the state's evidence. Who's going to determine that? Are we not talking really here about semantics? Whether the jury would be convinced? I mean, the trial court has to make that decision and in essence, in order to do that has to decide whether he's credible or not. So I think we're talking about 1 and the same thing council. Well, and that's the thing that when he she considered the evidence in isolation, she did not give the proper credibility determinations to Mr Horton. It's undisputed. He was there. He's listed in a police report, but she didn't consider it an isolation. As I said, I don't have the quote right at my fingertips, but it was pretty clear and it is in her. Well, here it is in its order, the court, the court confirmed it review and the quote is the entirety of the evidence file pleadings, appellate history and arguments. So she, she indicated she can she considered the entirety of the evidence. So I'm not sure where you're going with that. If you have another point to make, go ahead. If you would, you would want me to move to the unreasonable assistance and. No, I mean, you can certainly continue on if you wish, right? Yes, I'm sorry. I'm misunderstood. The thing is that she took the problem was that she considered. Accordance credibility as to the ultimate issue, and that's something that's for the jury to decide. So she essentially the court essentially. Took over the place of the fact finder and the thing is that the evidence wasn't that strong for the state. And if I remember correctly, in her dismissal order, the court did not address the highly biased testimony of the witness, Antoine Cox, who waited until after he was sentenced in a federal drug case. To say that he witnessed the shooting and the state's evidence doesn't even support that position because Justina Jordan, the girlfriend of Mr. McClain and the custodian, I believe his name is David Tucker said they didn't see anybody near the car of the shooter and Jordan specifically said that she did not see his car either until after the shooting. Well, but she definitively identified the defendant as the shooter no less than 3 times twice to the police and once in during the trial and said specifically that she would never forget his face. That's pretty strong testimony. Is it not? Your honor, there was a lapse of between 1 to 2 months for those ideas. So things could have happened. And also, I'm sorry, I don't under the things could have happened. Yeah, like, other she could have heard from the street. What it or or she counsel counsel. She was there. This was her fiancee. This was a pretty startling event. And that's an understatement, but she was also highly intoxicated, which was proven by an independent witness by 2 independence witness. Yes. You just said things could have happened. Are any of those elaborated on in the record? No, your honor, you're just arguing to us. Well, things could have happened. And so we're supposed to rely on, I guess, your supposition. That things could have happened to somehow affect. The determination of this witnesses ability to identify the defendant. No, I'm just saying that given the fact that she was intoxicated and there was no, no, that's not what she said. I know. And there was a gap between have happened. Right. And what I'm trying to zero in on is what are you talking about? Point to something in the record that tells us that things could have happened. Well, this is more of a, just like an inference of common sense. If 1 to 2 months go by. Everybody supposedly knows each other. It's something that might have happened. I mean, I can't point to anything on the record, but I will say that she took some time for her to make an identification and she was also inconsistent about certain things, which her intoxication affected her. She told the officer at on the scene that the shooter came up and directly pointed the gun at the test of McLean and then shot him. And then at trial. She said, oh, no, he reached around me and shot at McLean. She was also less than forthcoming about why she left the bar and then returned. So, when you put this all together, there are some holes to the state's evidence and because the state's evidence wasn't as strong as in, say, another case where the eyewitnesses don't have any. We're not impeach or other witnesses have not been, you know, like, they didn't have an incentive to testify favorably. Here, there is that so this the evidence that the support for of the of Mr. Fowler's testimony that he wasn't the shooter, we would argue that Horton adds to that. He strengthens that. And if you're balancing it. It shifts it slightly to Mr. Fowler's favor and any issues regarding his credibility or what weight should be assessed to that should go to a jury. Now, your honors is to the 2nd point. Fowler's post conviction counsel provided unreasonable assistance where he all but guaranteed the dismissal of the remaining claims by failing to address the untimeliness of the petition of the petition. So, let me ask you about that. Please. This is a very important point. Yes, you argue that he provided unreasonable assistance by removing the allegations of culpable negligence. That the defendant had originally included in his pro se petition in paragraphs, a 8 and a 9. But as I read the record and look at this 2nd, amended petition. Counsel did incorporate those allegations in this 2nd, amended petition. If we look at page 622 of the record, the common law record. He wrote that this includes here in as though set forth verbatim paragraph, a of his pro se petition regarding the historical facts of the proceedings, starting with the jury verdict. And at 631 of the common law record, counsel stated defendant was submitting the affidavits, the exhibits. That the defendant had previously submitted in this pro se post conviction petition or motion. So that necessarily incorporated all the documents that were necessary for alleging lack of culpable negligence, right? The August 9th motion 2010 motion for extension of time to file the post conviction petition. The letter the defendant wrote the clerk asking the status, the clerk's letter back to him. And an affidavit in which the defendant explained that he was on Ritalin, Adderall and what his limitations were for education. So in light of incorporating all of this specifically that's in the record in front of us. Isn't the premise of your argument? Flawed, I mean, how did he not incorporated when the record shows us in black and white that he did? Well, because at the second stage, it's not just about adopting, it's about shaping 651 C imposes a duty to shape the claim and to overcome procedural defaults. Mr. Horton is a pro se petitioner who doesn't know what exactly to argue to raise lack of culpable negligence. So it was on the PC council to shape that claim and it shows that he had no, he was actually did not know how to do that because at the motion to dismiss hearing, he confuses forfeiture. He argues forfeiture instead of lack of culpable negligence. So, it's not just on that point, counsel, as I read the record, he was responding to a claim of a statement to a statement that opposing counsel made. The assistant state's attorney never directly argued in his closing argument that the defendant failed to show lack of culpable negligence for filing this petition late. So I'm not, I'm not sure. But your honor, they did, they did argue that in the motion to dismiss. If you look at the state's motion to dismiss, they did say that the petition was timely and it was dismissed based on timeliness grounds. So, that should have alerted counsel that he needed to address it. This is very similar to the recent Illinois Supreme Court case in Addison, where the court. Consider the fact that a council provided unreasonable assistance by taking out a claim of ineffective assistance of counsel to overcome forfeiture, and then didn't respond to the state's argument and it was dismissed on that basis. It was remanded. Right. It was remanded. It wasn't dismissed. Right. It misspoke. But, yes, so that's what we would be asking that this case is like Addison, because it's not enough just to stand on the petition. You need to do something. To shape its claims. Well, we've got land up 1 of the cases you cite that and where the appellate court really held that the attorney certification that he quote presented the petitioners claims did substantially comply with a 651 C requirement. I mean, and here, you know, we've got a 651 C petition. So we've got the presumption. That needs to be rebutted, but. How is this any different? How's land any different from what council certified here in this case that he included defendants fundamental claims and that he added another claim. Yeah, so if I remember correctly, and Landa, there wasn't sufficient facts for the for the. For the court to for the I'm sorry for the PC council to investigate to actually add anything to the claim here. There was. In the record and in the petition evidence that Mr Fowler had a mental illness that he had severe literacy issues that he had been treated that his scores were low. So that was he should have investigated that and use cases to see if he could flush out the claim because that's what it wasn't done. How it was presented doesn't. Accurately, or doesn't sufficiently address the untimely filing, which also is obligated to do, especially as your honor pointed out, he added a new claim by adding a new claim. Counsel ascertained that that claim had merit and for it to be addressed. It had to be the timeliness how to be addressed and it wasn't it was specifically dismissed because lack of timeliness. And I think if he filed a 651 C certificate, don't we have to presume that he would have adequately investigated defendants claims unless the record here showed otherwise? And I don't know how the record here shows otherwise. Well, your honor, our position is that our client did rebut that claim based on the fact that. It wasn't properly lack of culture couple negligence argument wasn't properly developed or investigated and that's the reason the petition was dismissed. And again, he had an opportunity to reply and clarify that in the, in the motion to dismiss hearing and he didn't do that either. So, that that would be. Excuse me, did he say that by way of affidavit? I wanted him to do more on this culpable negligence claim and he didn't do it. Your honor, I wouldn't be able to raise that on appeal if it wasn't before the court. That's kind of my point. You're arguing a point that isn't even in the record. But it is your honor. I mean, it's through unreasonable assistance when you can look at the. Well, okay, let's talk about things that might not be sure about the fact that once the lawyer actually talked with the defendant and explains the circumstances and the difficulty and trying to. Establish a claim of that nature. The defendant goes. Yeah, you know, you're right. I'm okay with the ones that you've come up with for me. So, he files his 651 certificate saying, you know what I've talked with him. These are the claims that he wants raised. I've raised them fully. But now, see, you've decided. Oh, no, he didn't raise this culpability claim that the defendant who you've already said has no skill, knowledge and has mental deficiencies. Why do we immediately have to assume it's a default or defect by the counsel? As opposed to an acknowledgement or acquiescence by the defendant. Well, once he has actually filed, I'm sorry, I don't mean to interrupt you. No, no, that's fine. I needed to finish once he has submitted his certificate swearing under oath. As an officer of the court, these are the things I've done. And I have submitted everything satisfactory to the defendant after all conversations with him. Why do we now raise this inference? That, well, since it was raised before and it's not raised now, that it was actually a defect in counsel's representation, as opposed to very possibly, and I would suggest even more likely, an acquiescence by the defendant that, yeah, you're right. Let's go with the claims that we really think we've got some merit. Let's go with the strong ones. You know, there's no sense of focusing on something that we really can't establish very well. Why do we immediately have to assume, in light of his certificate, that this was actually a error on counsel's part? Sure. Your Honor, in Addison and in Suarez, the Illinois Supreme Court said that filing a 651c certificate does not create an irrebuttable presumption. I'm not saying that. That's why I asked you. Is there something in the record that rebutts that? Yes. The fact that the claim, the amended petition, does not specifically address the untimely filing and no argument is made and the dismissal was made based on the untimely filing. And I know even though under 651c claims, we don't look at the merit to the claim, there was another claim that had merit. That even the state at the motion to dismiss agreed that there was a memorandum of offer that Mr. Fowler, the state offered him 22 years. And one of the claims was that trial counsel failed to convey that claim. And that has substantial, it would make that a substantial showing at the second stage, but it couldn't have been addressed because of the lack of the counsel's failure to properly frame what was given in the petition, what Mr. Fowler alleged in the petition about lack of culpable negligence. Also, we argued as an alternative argument, if you believe the record is unclear, because the record is unclear as to whether Mr. Fowler acquiesced. It could be remanded under 615b as it was by the, this has been done in Seno Jackson in the first district, where Justice Hyman was like, you know what, I'm not confident to say this is unreasonable assistance, but I want more information. Let's send it back to ascertain what counsel did. And your honor, excuse me, excuse me, I'm just letting you finish your sentence, but your time is up and you'll have time on rebuttal. Thank you. Thank you. All right, Mr. Nicolosi. Good morning, your honors. Again, my name is Justin Nicolosi, counsel for the appellate prosecutor representing the state of Illinois in this matter. May it please the court, Ms. Puente, the state submits that this court should affirm the trial, the post-conviction court's decision below regarding the first issue. I don't have a whole lot to say, your honor, Justice Sienoff. You kind of took my arguments from me. That's okay, of course. Well, how do you respond then? How do you respond to counsel's argument that the trial court applied the wrong standard here? Misunderstood and applied the wrong standard. As you argued, your honor, I completely disagree with that. I think the court in its written vision here heralded the standard almost verbatim that it's supposed to follow when citing an actual innocence claim after an evidentiary hearing. The court said that the defendant was unable to establish that the third stage proceedings, which consisted of courtroom's testimony and the defendant's testimony, were of such conclusive character that they probably changed the outcome of the trial. That's what the judge said. That's what the judge is supposed to say. That's the standard with which the judge is supposed to consider the evidence presented at the hearing alongside the evidence from trial. Again, the judge also wrote that Horton's testimony could not overcome the overwhelming evidence from trial against the defendant. That necessarily indicates that the court didn't just consider Joseph Horton's testimony in a vacuum. They considered it in the context of the trial. I looked at the credibility of Horton's testimony. Of course, as you said, your honor, that is what the judge is supposed to do at this particular hearing, at this particular stage of proceedings. Realize that Joseph Horton did not have a lot of credibility. The differences between Horton's affidavit and his testimony were pretty stark. Saying in the affidavit, defendant was in the car, and then in testimony, saying defendant was out of the car. There's other things, of course, I wrote in my brief that large holes in Mr. Horton's credibility. Of course, the judge was supposed to consider that. As I wrote my brief, if there were, let's just say, a trial down the road, Mr. Horton's recollection is not going to get any better. As I argued in my brief, and this case has been up on appeal several times, the merits of the trial, the evidence, the strength of the evidence has been considered. As I argued in my brief, this was strong evidence against the defendant. Mr. Cox and Ms. Jordan's testimony was very strong. I think the court not only used the correct standard as evidenced by her written order, but that finding was not against the manifest weight of the evidence here. Well, one of the issues, obviously, is whether this was newly discovered. Horton's was newly discovered testimony, and the defendant testified at the hearing that he didn't know before 2019 that Horton claimed to have witnessed the shooting. And so why isn't this defendant's testimony sufficient to show that Horton's testimony would not have been discovered earlier through due diligence? Well, Your Honor, I did make the argument in my brief that this wasn't newly discovered. I figured it was worth pointing out that the defendant knew Horton was at the club. He knew he was there at night. He provided his name to police later. So he mentioned, I think, at the hearing that he attempted to contact Joseph Horton, but was unable to. And I think that was basically the foundation for why the court, a few years ago when this case was up, found that this was newly discovered evidence. I was just pointing out that the fact that the defendant was there, I don't know if he necessarily presented every or gave sufficient evidence of his efforts to contact Joseph Horton despite knowing he was there, despite knowing him for many, many years. I thought it was just worth pointing out. I'm not staking my claim to that, but I think it is worth pointing out that there wasn't sufficient. Perhaps the defendant didn't do all that he could do to contact somebody who he knew was there, could have possibly had information, and presented this before he ran into Horton in jail in 2019. So with respect to the other point, the question of reasonable assistance of post-conviction counsel, in light of what I mentioned and quoted that the post-conviction attorney put in the second amended petition from the first petition, what is the basis for your conceding that counsel didn't address defendant's late filing? Yes, your honor, I appreciate you making that point. I overlooked that in my brief that the defendant or that the counsel had referred to the defendant's post-A petition regarding paragraph A. That's an omission on my part and um So you're rescinding your concession at this time? Well, I understand that the judges this court can can look at the record and and consider what post-conviction counsel put into his petition and ignore my failure to to observe that the court did or that post-conviction counsel did refer to a particular part of the post-A petition. So I would like this court to consider this rescinding of my position. My brief was focusing on other arguments that I'm trying to justify counsel's inability to not outright allege that the defendant's failure to file was not due to his probable negligence and that's an omission on my part, your honor, and regret not pointing out that particular paragraph in the petition. Okay, I have another question. In analyzing whether post-conviction counsel actually did provide reasonable assistance, you emphasize in your brief that the record does not support a meritorious claim that the defendant lacked culpable negligence for the late filing. But if we look at Addison, People v. Addison and the holding there in which the Supreme Court did remand the case for a second stage or for further second stage proceedings without looking at the merits, how is that consistent with the holding in Addison and what that tells us and and the reference in Addison to Suarez? Your honor, regarding Suarez and Addison, I think the case that I've cited is Proffitt and it distinguished Suarez specifically regarding the looking at the merits of the underlying claim. In Proffitt, it distinguished Suarez because there was no 651c certificate filed in Suarez. In our case and in Proffitt, there was a 651c certificate which created that rebuttable presumption. That's why Proffitt, and again, I focused on Proffitt in my case because I think it's the most analogous to our particular case because there was a 651c certificate filed. Therefore, the Proffitt court, the first district distinguished Suarez that it could look and determine the merits of a defendant's claims that he was not culpable negligent. And that's why I think in this case, we had a certificate that distinguishes our case from Addison-Suarez because I think there is a line of cases where you can look at the underlying merits. I discussed the merits in my brief at length. So I think, your honor, that's where I would lie on the distinguishing Suarez-Addison versus and to a lesser extent, which is also a Supreme Court. How do you respond to opposing counsel's point and argument that counsel here, post-conviction counsel, was required to do more than merely incorporate the allegations from the pro se petition and the second petition and to, quote, shape an argument and make an argument for the defendant here? How do you respond to that? Do you agree? No, your honor, I don't agree that the counsel was required to do more. Why not? Because I believe in counsel's certificate, counsel contended that he went through the record, he considered all the documentation, he discussed with defendant through letters, and he put defendant's main three arguments that were in his pro se petition in his amended petition. He even added a conflict issue. I think based on the law that establishes the defendant doesn't or that counsel does not need to parrot the language of 651c, that's not a requirement. I think the fact that the post-conviction counsel amended and included by incorporation that paragraph A, that necessarily means that counsel considered everything that he believed was meritorious that would present the defendant's claims in the best possible light and present them for consideration during post-conviction proceedings.  I think post-conviction counsel satisfied the rule in this case. Post-conviction counsel argued that post-conviction counsel here confused the concepts of forfeiture and lack of culpable negligence. Do you agree? Honestly, I didn't research for this particular argument that particular part of what counsel said. I'm not going to take another stand on that at this point, Your Honor, because I don't remember specifically what he said. For my preparation, I was focusing on different parts of my brief and my argument, and I can't... Thank you for letting us know. I apologize. I did not focus on... I did not go back and re-read what counsel said at the hearing, so I don't... I'm not well-versed at that at this point. With that... Ms. Puente rather effectively argued that the failure to flush out the claims by pointing out that there was another good claim available in the record that wasn't properly addressed, which might then rebut the certificate. How do you respond to that? Well, Your Honor, that wasn't flushed out in this record. I think you had discussed with opposing counsel there were several things that were discussed during her argument that weren't flushed out on the record, and I think that's one of them, whether or not that was a meritorious claim or not. And we're all just... We're speculating. We don't know what counsel thought about that particular argument, and we're all kind of just guessing as to whether or not that was meritorious. And we're all just speculating as to what counsel thought of that, and something they need to move forward. If there are any other questions, I'd be happy to answer them. But with that, the state submits that this court should affirm the dismissal of the denial of defendant's post. Thank you. Justice Dierman, anything further? No, thank you. Justice Vancel? Nothing. Thank you. Ms. Puente, you may begin your rebuttal argument. Yes, Your Honor. Thank you. As to point one, I just want to briefly highlight that the appellate court previously found that Horton's affidavit and the petition made a substantial showing of actual innocence, given that it contradicted the state's testimony. At the hearing, the Horton's testimony... Excuse me. I apologize. Would you repeat what you just said? I'm sorry. I'm not sure I followed it. Yeah, sure. The appellate court had previously found that Mr. Horton's affidavit and the claim in the petition met the second stage burden, which was that it made a substantial showing of actual innocence. The hearing, while at the hearing, Horton made a substantial showing because it contradicted the trial evidence. At the hearing, while Mr. Horton did not... There was issues with his testimony. I mean, he... The discrepancies, he had discrepancies as to who was in the car, if a follower was in the car or not, the description of the shooter, as well as, I believe, the name of the club. But those are all discrepancies that are easily explained. I mean, who remembers the name of the club or a bar that you were at 20 years ago? And he was so focused on the weapon that that could have affected his ability to perceive the other issues. And these are all minor discrepancies. And when balanced against the trial evidence, where the state also had... Their eyewitnesses had deficient discrepancies, there could have been, if a jury heard Horton's testimony, there could have been a different result on retrial. As to... But the test is not could have been, it's more of a probability that it would, correct? Yes, yes, yes. It was just a misstatement on my part. I'm sorry, Your Honor. As to the second unreasonable assistance claim, Addison clearly stated that whether you consider the merits of an underlying claim, it doesn't hinge on whether counsel filed a 651c certificate or not. The counsel is still obligated to comply with 651c, and you look to the record to rebut that presumption. Later in Huff, the court also said post-commissioned counsel cannot merely just stand on a filing. If he believes it has merit, he has to shape the claims, and that was not done here. And... Excuse me. So what should have been... How would he have shaped the claims? What are you referring to specifically? Beyond what we saw that was incorporated that the defendant himself said regarding his own limitations, etc. What more should have been added to meet the criteria of, quote, shaping the claim? Right. He could have requested medical records, school records. Those were identified also in the PSI, the GED scores. He mentioned something else about... Mr. Fowler mentioned about lockdowns. He could have verified if a lockdown had affected him closer to the date of when he was supposed to file. So just investigate. And if he investigated and realized, you know what, I can't do anything with this, fine, you know, but make a record of that. But we... There's just nothing here to say what he did. And it makes... It's not a strategical decision where one claim had substantial merit. And by him raising a second claim, I believe it was a conflict, a counsel claim. Counsel was saying that, you know, I do believe this claim is meritorious as an officer of the court. And if I'm going to include that, I have to make sure that I address any procedural bars. And the fact that he filed the 651c, I want to talk just briefly about the timing of it. The 651c, just because he filed a 651c doesn't forgive or somehow allow post-conviction counsel to then later not address a claim that's raised in a motion to dismiss. Because usually the 651c is filed before that. And that's where, in the motion dismissed, that's where the timeliness came up by the state. And even when he was alerted to that, counsel did not address that. If you have no further questions, Your Honors... Well, I'll just state that, I mean, the procedure used here was a little unusual, but both counsel agreed to it. And that is that the second stage and the third stage would be heard together. So that kind of put a little different spin on things. Correct, Your Honor. And both agreed that that would be an appropriate way to proceed. Yes. If you have no further questions, Your Honor, we would ask for a motion to dismiss. For this case to be remanded for a new trial in light of the actual innocence claim. As for the unreasonable assistance, if you find that Mr. Fowler rebutted the presumption of 651c and reasonable assistance, please send it back for additional second stage. And if the record is incomplete or silent, we would ask that those be remanded for an additional inquiry under 615b. Thank you, Your Honor. Thank you. Anything further, Justice Dearmond? No. And Justice Vanzel? No, thank you. Okay. Thank you, counsel, both of you for your arguments today. The court will take the matter under advisement and render a decision in due course. Court stands in recess at this time.